UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BILLY MAYER,
o/b/o DAVID G. MAYER[1]

              Plaintiff,                      CIVIL ACTION NO. 06-14371

                v.                          DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

       This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion be granted and that plaintiff's cross-motion be denied.

### II. Background

       On June 24, 2004, plaintiff filed applications for Social Security Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI), alleging that he was disabled due to

back surgery, an inability to stand or lift, gall bladder problems and pancreatitis, with an onset

---

[1]David G. Mayer died on January 14, 2007, and his mother, Billie Mayer filed the motion
for summary judgment on his behalf.  "Plaintiff" in this Report and Recommendation refers to
David G. Mayer.

-1-

date September 1, 2003.  (Tr. 51-53, 92, 366-368)  Plaintiff completed  high school and two

years of college, and has a work history including employment as an electronics technician.  (Tr.

93, 96)

The Social Security Administration (SSA) denied plaintiff's applications on October 13,

2004.  (Tr. 31-37, 369-374)  Plaintiff then requested a hearing before an administrative law judge

(ALJ).  (Tr. 41)  The hearing was held on April 4, 2006, before ALJ Stanley Hogg.  (Tr. 386-

413)  Plaintiff, represented by appointed counsel, appeared and testified at the hearing.  The ALJ

also took testimony from a vocational expert (VE).

On May 25, 2006,  the ALJ issued a decision denying plaintiff's claim.  (Tr. 12-22)  The

ALJ determined that plaintiff had the following impairments: "degenerative disc disease, status

post diskectomy; seizures; and status post cholecystecomy."  (Tr. 20)  The ALJ also determined

that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii)

and § 416.920(a)(4)(ii), but that he did not have an impairment that met or equaled any of the

impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 20)  The

ALJ concluded that plaintiff had the residual functional capacity to perform a significant range

of sedentary level work and that there is a significant number of jobs in the national economy

that plaintiff can perform."  (Tr. 21)  Accordingly, the ALJ found that plaintiff was not

"disabled" within the meaning of the Social Security Act.  (Tr. 21)  Plaintiff was 34 years-old at

the time of the ALJ's decision.  (Tr. 19)

On June 6, 2006, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 10)  The Council denied the request on September 20, 2006.  (Tr. 6-9) The ALJ's decision thus became the final determination of the Commissioner.

On October 4, 2006, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends that, because the ALJ erred in assessing plaintiff's credibility and mental limitations, the ALJ posed an inaccurate hypothetical to the VE and the ALJ did not have a substantial basis for its disability determination.  The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

**III. Legal Standards**

**A. Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  See also 42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job

> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).  See also 42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden

of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. §§ 404.1520,

416.920.  In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment."  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

At the hearing, the ALJ posed a series of hypothetical questions to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. In the hypothetical question subsequently used in its ruling, the ALJ asked the VE to assume:

> [plaintiff] would be capable of light exertional work, that there would be seizure precautions, that is to say they should not – should not be doing any work involving climbing, or driving vehicles, or working around moving machinery.
>
> ***
>
> [plaintiff is limited in that he would have one to two seizures a month where basically he would be unable to work the day he has the seizures.
>
> ***
>
> [plaintiff] would require a sit/stand option where he could alternate sitting and standing during the course of the eight-hour day, assuming he can sustain it for 40 hours a week. [Tr. 409-411]

In response to the hypothetical, the VE testified that such a person could work as a sorter, hand packager, or visual inspector, and that approximately 7,500 such jobs existed in the Detroit area and 15,000 such jobs existed in the State of Michigan.  (Tr. 411)  Based on that testimony, the ALJ concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding.  The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical.  Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints.  The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence."  Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of his limitations.  Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her arguments that ALJ erred in assessing his credibility and addressing his mental limitations.

## A. Plaintiff's Credibility

At the hearing, plaintiff testified that his main problems at work were his seizures, which caused him to lose consciousness at work and "be carted off by EMS," and that he still had one to three seizures a month. (Tr. 391, 396, 403) Plaintiff also testified that, following his back surgery in 2001, his back pain has gotten worse, but the intensity of the pain varies day by day. According to plaintiff, because of his back pain, his back tingled, he could not sit for long, and he could not walk far. (Tr. 392, 404) Plaintiff further claimed he could sit for 30-45 minutes, walk for a half mile, and stand for 5-10 minutes. (Tr. 393) Plaintiff did acknowledge that he has good and bad days, and that he is on medication for his pain, but he also testified that the medication would only help sometimes and that it made him nauseous and drowsy. (Tr. 393-394) Plaintiff further testified that he needs to lie down for an hour or two every day during the day. (Tr. 394-395) Plaintiff claims he is able to lift a gallon of milk in each hand. (Tr. 400)

The ALJ determined that plaintiff's allegations regarding her limitations were not totally credible. (Tr. 20) Specifically, the ALJ made the following determination regarding plaintiff's credibility:

> While the [plaintiff's] testimony was substantially credible, his limitations would not preclude the performance of a narrow range of sedentary work. [Plaintiff] testified to a sitting tolerance of 1/2 hour to 45 minutes at one time, walking about 1 mile, and standing only for 5 or 10 minutes. He is able to lift a gallon of milk in each hand. With pain medication, the severe level is (sic) pain is reduced to no more than a moderate level of pain. While the [plaintiff] testified concerning side effects of nausea and drowsiness, there is no medical evidence of complain (sic) by the [plaintiff] to treating physicians. While the [plaintiff] will lie down a lot at home, there is no medical evidence supporting a need

> to lie down a lot because of pain.  While the [plaintiff] was
> considered for a fusion of the back, the [plaintiff] has elected
> against it.  The [plaintiff] does some housework and will take his
> son to the park.  He reads magazines and will record videos at
> home.

[Tr. 18]

From that language, and the actual limitations used in the hypothetical question quoted above, it

is clear that the ALJ only rejected some of plaintiff's testimony.  First, the ALJ found plaintiff

would have one to two seizures a month that made him unable to work the day he has the

seizures, while the plaintiff testified he suffered one to three seizures a month.  Second, the ALJ

clearly rejected plaintiff's claim that he had to lie down one to two hours during the day every

day.  Third, the ALJ appeared to have discounted plaintiff's testimony regarding the side effects

of his medication.

        An ALJ's findings regarding the credibility of the applicant "are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.

1997).  However, credibility assessments are not insulated from judicial review.  Despite the

deference due, such a determination must nevertheless be supported by substantial evidence.  Id.

With regard to allegations of disabling pain, the regulations provide that a claimant's statements

regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]"  20

C.F.R. § 404.1529(a); see also Walters, supra, 127 F.3d at 531.  Rather, "there must be medical

signs and laboratory findings which show that you have a medical impairment(s) which could

reasonably be expected to produce the pain or other symptoms alleged and which, when

considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

As noted by the ALJ, plaintiff's testimony is not corroborated by the medical evidence. The medical evidence, including plaintiff's two surgeries, shows the existence of plaintiff's impairment, but it does not establish the severity of plaintiff's impairments. Instead, the more specific portions of the medical records weakens plaintiff's claims. Dr. Ho, plaintiff's treating physician often set restrictions on plaintiff's activities following plaintiff's surgeries, but those restrictions were limited to bending, lifting, twisting, and driving. (Tr. 115, 125, 151, 159) The only other recommendation Dr. Ho made, which he made on October 29, 2004, was restricting plaintiff to light work status and work where plaintiff has the ability to sit and stand at will. (Tr. 125) No records suggest that plaintiff has to lie down during the day every day and plaintiff never discussed such a limitation with anyone. The record does reflect that plaintiff suffers from seizures, but nothing establishes that or plaintiff has seizures one to three times a month. At times, the medical records provided that plaintiff's seizures were reduced or stabilized. (Tr. 144, 146, 151) Moreover, as noted by the ALJ, the seizures have not been observed by medical personnel and there are no clinical findings of neurological deficits following any reported seizure. (Tr. 17) Plaintiff did complain once, during his years of treatment, about getting nauseous from his medication. (Tr. 147) Overall, while plaintiff's impairments existed and he repeatedly complained of pain, there is little corroboration for his testimony in the medical evidence.

Additionally, plaintiff's conservative treatment and his acceptance of that treatment weakens his credibility. An ALJ considers use of medication and other treatment when evaluating credibility. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). While plaintiff argues that his surgeries show that his treatment has been aggressive, his treatment was limited to medications following his second surgery in 2001 even though Dr. Ho repeatedly raised the possibility of lumbar and spinal fusion from September 2003 to August 2005. (Tr. 121, 149, 282, 278) Instead of electing to proceed with surgery, plaintiff expressly told Dr. Ho on several occasions that he wished to continue with the "conservative management program." (Tr. 125, 134, 145, 149) Plaintiff's choice to limit his treatment to conservative treatments suggests that his impairments are not as severe as he alleged.

Plaintiff's record of daily activities also provide little support for his testimony. In his function report, plaintiff did indicate that his sleep varies, but he never stated that he needed to lie down one to two hours every day during the day. He also noted that pain has slowed him down and limited his activities, but plaintiff also reported that he walks to the park three to four times a week to spend time with his kids, plays guitar everyday, prepares meals, dresses himself, shops for food, and does laundry. (Tr. 64-67) Nothing in that function report specifically mentions lying down during the day, having seizures, or having trouble with medication. (Tr. 64-67) Consequently, to the extent plaintiff's daily activities are relevant to the credibility determination, plaintiff's own reports do not support his claims.

According great weight and deference to the ALJ's superior position to observe plaintiff's testimony, substantial evidence exists to support the ALJ's credibility determination.

Plaintiff's testimony is not corroborated by the medical evidence, the history of his treatment, or his daily activities.  A plaintiff's statements regarding his pain or other symptoms are insufficient by themselves to establish that the plaintiff is disabled, and in this case that is essentially all that plaintiff offers.

### B. Mental Impairments

Plaintiff also argues that the ALJ erred in failing that she suffered from the mental impairments.  Specifically, plaintiff points to two reports.  On August 18, 2004, plaintiff met with Dr. Howard R. Belkin for a consultative psychiatric evaluation and Dr. Belkin diagnosed plaintiff as having "major depressive disorder recurrent."  (Tr. 317)  Dr. Belkin also noted that plaintiff had feelings of worthlessness, helplessness, and hopelessness.  (Tr. 315)  Dr. Belkin further noted that his prognosis was guarded for plaintiff.  (Tr. 317)  On October 4, 2004, Dr. Zahra Khademian, a State agency physician, concluded that plaintiff had moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual with customary tolerances, and accept instructions and respond appropriately to criticism.  Dr. Khademian also concluded that plaintiff was not significantly limited in understanding, memory, carrying out detailed instructions, maintaining attention and concentration, making decisions, and completing a normal workweek without interruptions.  (Tr. 343-344)

In its ruling, the ALJ stated:

> the [plaintiff] is not found to have had any significantly limiting
> mental impairment.  The record does not document any psychiatric
> treatment or psychiatric hospitalizations.  Treatment records do not
> indicate any particularly abnormal behavior.  And the [plaintiff's]
> activities of daily living seem to have been limited by physical

> factors rather than any mental impairment.  The [plaintiff] did
> claim depression as a reason for his disability at the hearing.
> While there is a period when claimant was depressed in August
> 2004, records do not support a continuing mental impairment that
> lasted for 12 months. [Tr. 18]

In his motion for summary judgment, plaintiff merely notes the existence of the two reports discussed above and claims that plaintiff had mental impairments.  The lack of support in plaintiff's motion is telling as there is absolutely no support in the record, outside of those two reports from doctors who each saw plaintiff once, suggesting that plaintiff suffered from any mental impairments.  Prior to his hearing, plaintiff never complained about any mental impairments, nor were any ever documented.  Plaintiff never sought any treatment for mental impairments.  Furthermore, as noted by the ALJ, unless an impairment is expected to result in death, "it must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.  Even if the reports were accepted, neither suggests that plaintiff's mental impairments met the duration requirement.

### C.  Substantial Evidence

As discussed above, where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

Here, plaintiff has failed to persuade the court that the hypothetical the ALJ posed to the VE did not paint an accurate picture of the extent of his physical and mental limitations.

Accordingly, the VE's testimony is sufficient to support the ALJ's determination that plaintiff is not disabled.

**V.  Conclusion**

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan

VIRGINIA M. MORGAN

Dated: June 11, 2007                    UNITED STATES MAGISTRATE JUDGE

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 11, 2007.

s/Jane Johnson

Case Manager to

Magistrate Judge Virginia M. Morgan